IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| UNITED STATES OF AMERICA | * |
| v. | * Criminal No. RDB-23-0265 |
| IDRISSA BAGAYOKO, | * |
| Defendant. | * |

* * * * * * * * * * * * * *

## MEMORANDUM OPINION

Defendant Idrissa Bagayoko ("Bagayoko" or "Defendant") is charged in a two-count Indictment with knowingly distributing and selling an unregistered pesticide in violation of the Federal Insecticide, Rodenticide and Fungicide Act, 7 U.S.C. § 136j(a)(1)(A) and § 136*l*(b)(1)(B) (Count I), and reckless violation of transportation safety regulations promulgated pursuant to the Federal Materials Transportation Act, 49 U.S.C. § 5110 and § 5124(a) (Count II). (ECF No. 1.) Among the motions presently pending before this Court is the Defendant's Motion to Suppress Evidence Obtained in Violation of the Fourth Amendment, (ECF No. 50).

The parties' submissions have been reviewed, and on October 7, 2024, the Court heard initial arguments regarding that Motion.[1] For the reasons set forth on the record at the hearing and explained below, Defendant's Motion (ECF No. 50) is DENIED.

---

[1] At the conclusion of the hearing on October 7, 2024, and by subsequent letter order, the Court set a continuation of the hearing for October 24, 2024, to address the remaining pending motions and any forthcoming motions *in limine*. (ECF No. 63.)

1

## BACKGROUND

On September 29, 2021, at about 3:45 PM, Elkton Police Department Canine Officer Matthew Nussle ("Officer Nussle") conducted a traffic stop of the Defendant on Route 279 in Elkton, Maryland, for driving with expired tags.[2]  (ECF No. 57 at 2; ECF No. 50 at 2; ECF No. 50-1 at 4.)  Officer Nussle first noticed that Defendant's minivan had expired Texas tags when he saw it parked at the Flying J Truck Stop on Belle Hill Road, but he waited until Defendant and his passenger, Seydou Dembele ("Dembele"), drove away before initiating the traffic stop on Route 279 near the ramp to I-95 North.[3]  (ECF No. 50 at 2; ECF No. 57 at 2, 7.)  As the only officer present, Officer Nussle approached the minivan and requested identification from Defendant, who produced his Ohio driver's license, and Dembele, who provided his Mali passport.[4]  (ECF No. 50 at 2.)  While collecting these documents, Officer Nussle noticed several sealed cardboard boxes—which he associated with marijuana trafficking—in the back of Defendant's minivan.  (*Id.* at 3.)

Officer Nussle then returned to his vehicle with the identification documents, and within about eight minutes both Maryland State Trooper Joseph Bagonis ("Trooper Bagonis") and Elkton Police Corporal Ulysses Desmond ("Corporal Desmond") arrived at the stop.[5]

---

[2] At the time the stop occurred, Officer Nussle was patrolling with his police dog, K9 Mauser, in his vehicle.
[3] As explained below, the I-95 corridor is a known drug-trafficking corridor and the area around the Flying J Truck Stop—including Route 279 where the traffic stop occurred—is a high crime area.
[4] Defendant, a native French speaker who grew up in the Republic of Mali, has lived in New York since 2008 and became a United States citizen in 2022.  (ECF No. 51 at 1; ECF No. 55 at 1-2.)
[5] The Government argues that Officer Nussle called for backup during the stop for safety reasons because there was more than one occupant in the vehicle.  (ECF No. 57 at 2.)  During the Motions Hearing on October 7, 2024, Officer Nussle testified that he could not remember whether he called for backup or backup officers responded of their own volition.  He explained that available officers often respond to ongoing traffic stops for safety reasons in light of the high drug trafficking rates in the I-95 Corridor.  However, it is not Elkton Police Department procedure to require backup officers.  The early details of the stop are somewhat disputed because, despite Elkton Police Department policy requiring use of body-worn cameras during enforcement situations and citizen interactions, Officer Nussle's body-worn camera did not turn on until after both backup

2

(ECF No. 57 at 7.) Trooper Bagonis arrived first, within about five minutes of the initial stop, followed a few minutes later by Officer Desmond. At some point, Officer Nussle instructed Defendant and Dembele to exit the vehicle and asked them separately about their travel plans and relationship. Defendant told Officer Nussle that Dembele was his nephew, and they were traveling from Washington, DC, to New York with a load of "African items." (ECF No. 50 at 2, 8.) Dembele called Defendant his "pops" but claimed they were not related and were traveling from New York to Philadelphia. (*Id.*) Approximately three minutes and ten seconds after both backup officers arrived, Officer Nussle asked Corporal Desmond to check Defendant's license and outstanding warrants while he conducted a canine scan of Defendant's vehicle. (*Id.* at 7-8.) Officer Nussle asked Corporal Desmond—rather than Trooper Bagonis—to check Defendant's documents because state troopers use a different radio frequency than Elkton police officers, and Elkton Police Department procedure directs officers to use the same radio frequency throughout a traffic stop. While K9 Mauser and Officer Nussle scanned the vehicle, Trooper Bagonis monitored Defendant and Dembele, who sat on the guard rail near their minivan. (*Id.*)

K9 Mauser positively alerted on the driver's side corner of the minivan's rear hatch.[6] (*Id.* at 3.) During the subsequent search of the vehicle, Officer Nussle asked Defendant what was inside the cardboard boxes in the back of the minivan. Defendant responded that it was tea and invited him to open the boxes to check. (ECF No. 57 at 10.) Officer Nussle opened

---

officers had arrived. Trooper Bagonis, who arrived first, was not wearing body-worn camera. (ECF No. 50 at 2; ECF no. 57 at 3.) Accordingly, the available body-worn camera footage of the stop begins after both backup officers had arrived, and the Court relies on Officer Nussle's testimony about what occurred before the body-worn camera footage began.

[6] K9 Mauser alerted to the odor of marijuana that Dembele had previously distributed. A search of the vehicle revealed multiple small plastic bags but no drugs, and Dembele was not charged. (ECF No. 57 at 4.)

one of the eighteen boxes and determined it contained another box labeled SNIPER. (ECF No. 50 at 3.) Officer Nussle ultimately determined that each box contained ninety-six bottles of Sniper DDVP ... not tea. (*Id.*)

## STANDARD OF REVIEW

In a motion to suppress evidence, the government bears the burden of showing that it acted lawfully by a preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 177 78 n. 14 (1974) ("[T]he controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence."). *See also United States v. McGee*, 736 F.3d 263, 269 (4th Cir. 2013) ("The government bears the burden of proof in justifying a warrantless search or seizure."). A traffic stop constitutes a seizure and must meet the Fourth Amendment's reasonableness requirement. *United States v. Bowman*, 884 F.3d 200, 209 (4th Cir. 2018) (citing *Whren v. United States*, 517 U.S. 506, 809 (1996)).

A traffic stop is "reasonable where the police have probable cause to believe that a traffic violation has occurred," *Whren*, 517 U.S. at 810, and remains reasonable so long as its duration and scope are limited to accomplishing the purpose of the stop. *See Rodriguez v. United States*, 575 U.S. 348, 350–51 (2015) (citing *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). A stop that is constitutional at its inception may become unconstitutional, therefore, if officers unreasonably prolong it or exceed its initial purpose by searching for evidence of a crime that they do not have reasonable suspicion to believe occurred. *Id.* Accordingly, absent reasonable suspicion or consent, a canine scan of a vehicle is unconstitutional if it prolongs a traffic stop beyond the time required to effectuate the purpose of the stop. *United States v. Williams*, 808 F.3d 238, 245-46 (4th Cir. 2015) (citing *Rodriguez*, 575 U.S. at 357-58). Where an officer has

reasonable suspicion or consent to conduct a canine scan, however, he may do so even if the scan prolongs the traffic stop. *United States v. Branch*, 537 F.3d 328 (4th Cir. 2008).

## ANALYSIS

In his Motion to Suppress (ECF No. 50), Defendant argues that the Sniper DDVP discovered during the stop, and any fruits of that evidence, must be suppressed because Officer Nussle unconstitutionally prolonged the stop to conduct a canine scan without reasonable suspicion or consent.[7]  (ECF No. 50 at 5; ECF No. 59 at 1.)  Because the canine scan was only constitutional if it (1) did not prolong the stop, or (2) was based on reasonable suspicion, the Court addresses each argument in turn.

### I.     The Canine Scan Did Not Unconstitutionally Prolong the Traffic Stop

Defendant contends that because Officer Nussle determined Defendant's tags were expired before the stop began, the stop should have lasted only as long as needed to issue a citation for expired tags and conduct the inquiries—checking Defendant's license, proof of insurance, and outstanding warrants—incident to any traffic stop.  (ECF No. 50 at 5.) Defendant asserts that Officer Nussle prolonged the stop by abandoning his investigation of the expired tags, waiting eight minutes for backup to arrive, and conducting a canine scan without reasonable suspicion or consent.  (*Id.* at 6, 7; ECF No. 59 at 3.)  Specifically, Defendant contends that Officer Nussle failed to diligently investigate the original purpose of the stop—citing Defendant for driving with expired tags—while he waited for backup and once the

---

[7] Defendant does not contest the validity of the original traffic stop or the existence of probable cause to search the vehicle after the positive canine alert.  He only challenges the constitutionality of the canine scan itself.

5


backup officers arrived.  (ECF No. 59 at 3.)  Defendant argues that Officer Nussle did not need backup officers' assistance to issue a citation for driving with expired tags.  (*Id.* at 3, 4.)

In response, the Government contends that the stop was not prolonged because Officer Nussle conducted the canine scan within approximately eight minutes of the original stop, and officer safety concerns in a known drug-trafficking area justified the length of the stop.  (ECF No. 57 at 8.)  First, the Government emphasizes that K9 Mauser was at the scene when Officer Nussle initiated the stop and scanned the vehicle within four minutes of the backup officers' arrival.  (*Id.* at 7, 8.)  The Government argues that there is no firm time limit on a traffic stop, and Officer Nussle waited for backup to assist him in providing a traffic citation because he was concerned for his safety after stopping a vehicle with two occupants in a high crime area.  (*Id.* at 2, 7, 9.)  Finally, the Government asserts that the canine scan could not have prolonged the stop because Corporal Desmond checked Defendant's license and warrants during the scan.  (*Id.*)

As the Supreme Court held in *United States v. Rodriguez,* even a *de minimis* extension of a traffic stop to conduct a canine scan without reasonable suspicion or consent violates the Fourth Amendment.  575 U.S. 348, 357 (2015).  In *Rodriguez,* the Supreme Court distinguished "'legitimate and weighty'" officer safety concerns during a traffic stop from "safety precautions taken in order to facilitate … detours" from a stop's original mission.  *Id.* (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 110-11 (1977)).  The U.S. Court of Appeals for the Fourth Circuit has never addressed, however, whether waiting for backup officers during a traffic stop in a high

crime area unconstitutionally prolongs a traffic stop.[8]  Other circuits have suggested that waiting for backup does not unconstitutionally prolong a stop because "attending to safety concerns" is part of effectuating the original purpose of a traffic stop. *United States v. Burwell*, 763 Fed. App'x 840, 844 (11th Cir. 2019).  *See also United States v. Stewart*, 902 F.3d 664, 674-75 (7th Cir. 2018) (suggesting officer safety may permit officer to await backup without unconstitutionally prolonging traffic stop); *United States v. Albriza*, 2022 WL 17101253, at *3 (11th Cir. Nov. 22, 2022) (holding traffic stop was not prolonged because officer waited for backup to avoid being outnumbered by vehicle's occupants).

Here, Officer Nussle did not unconstitutionally prolong the stop when he waited less than five minutes for backup after he stopped a vehicle with two occupants in a high crime area. *See United States v. Newland*, 246 Fed. App'x 180, 188 (4th Cir. 2007) (collecting cases deeming I-95 a drug corridor).  Officer Nussle was outnumbered by the occupants and stopped Defendant's minivan in an area as to which he testified is known to the Elkton Police Department for prostitution and drug-related crimes.  Moreover, Officer Nussle testified that he had been involved in hundreds of traffic stops in that area and vehicles with expired tags very frequently are involved in drug trafficking.  While Defendant contends that Officer Nussle called for backup to enable him to conduct the canine scan, Officer Nussle was conducting a traffic stop—one of the most dangerous situations for a police officer—in a high crime area known for drug trafficking.  Because Officer Nussle's decision to wait for backup

---

[8] As explained below, the Fourth Circuit has taken judicial notice that I-95 is a known drug corridor. *See, e.g., United States v. Watkins*, 816 F.3d 664, 674-75 (4th Cir. 2020).

was related to his ability to safely effectuate the purpose of the stop, the stop was not unconstitutionally prolonged.

## II. The Canine Scan Was Based on Reasonable Suspicion

Alternatively, even if the stop were prolonged, Officer Nussle had reasonable suspicion to justify a canine scan of the vehicle. Defendant contends that Officer Nussle's claimed reasonable suspicion rested on minor inconsistencies—(1) Defendant and Dembele's different stories about their travels and relationship; (2) Defendant driving a minivan with expired Texas tags and an Ohio driver's license in an area of I-95 known for drug transactions; and (3) the presence of multiple cardboard boxes in the vehicle—that he could have clarified with further questioning. (*Id.* at 8, 9.) Defendant explains that Dembele told Officer Nussle they were traveling from New York to Philadelphia while Defendant stated they were traveling from DC to New York because they were on their way to Philadelphia after a trip from New York to DC. (*Id.*) He argues that he called Dembele his nephew because he views Dembele's mother like a sister. (*Id.* at 2 n.2.) Defendant contends that the parties' language barrier contributed to these inconsistent responses. (*Id.* at 9.) Defendant asserts that the boxes in the minivan cannot supply reasonable suspicion because there was nothing to suggest they held contraband, and he told Officer Nussle they contained "African items." (*Id.*)

In response, the Government argues that Officer Nussle had reasonable suspicion to conduct a canine scan based on (1) Defendant's presence in a known drug corridor and high crime area; (2) the vehicle's expired Texas tags and Defendant's Ohio driver's license, neither of which matched the travel plans Defendant or Dembele described; (3) Defendant and Dembele's inconsistent statements regarding their travel plans and relationship; and (4) the

8

presence of multiple sealed cardboard boxes in the back of Defendant's minivan. (ECF No. 57 at 7.) At the Motions hearing, Officer Nussle testified that the location where he stopped Defendant is in a high crime area known for drug transactions and prostitution.[9]

Reasonable suspicion is "a 'common sense, nontechnical' standard that relies on the judgment of experienced law enforcement officers." *Williams*, 808 F.3d at 246 (quoting *Ornelas v. United States*, 517 U.S. 690, 695 (1996)). Reasonable suspicion exists where an officer can point to "specific and articulable facts, which, taken together with rational inferences from those facts" reasonably suggest criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). *See also Williams*, 808 F.3d at 246 (quoting *United States v. Foster*, 634 F.3d 243, 248 (4th Cir. 2011) ("[W]e require the detaining officer 'to either articulate why a particular behavior is suspicious or logically demonstrate, given the surrounding circumstances, that the behavior is likely to be indicative of some more sinister activity.'"). In the context of a traffic stop, the Fourth Circuit evaluates reasonable suspicion by considering whether the factors surrounding the stop "in their totality serve to eliminate a substantial portion of innocent travelers." *Williams*, 808 F.3d at 246. Here, Officer Nussle's observations in their totality differentiated Defendant from a substantial portion of innocent drivers and created a reasonable suspicion of drug trafficking.

Inconsistent statements, presence in a high crime area, an out-of-state license plate, an out-of-state driver's license, and transporting sealed cardboard boxes all contribute to reasonable suspicion. Although circuits are split on whether a language barrier diminishes the weight of inconsistent statements in a reasonable suspicion analysis, the Fourth Circuit has

---

[9] The Government also argues that Officer Nussle had probable cause to search the vehicle after K9 Mauser's alert, and Defendant consented to the search of the boxes by telling Officer Nussle to open them. (ECF No. 57 at 10, 11.) Defendant only challenges the constitutionality of the canine scan itself, however, so the Court need not address these arguments.

held that inconsistent statements may create reasonable suspicion. *United States v. Sang*, 89 F.3d 831 (Table), 1996 WL 316479, at *2 (4th Cir. June 12, 1996) (finding reasonable suspicion where "driver and passenger's travel plan stories conflicted" and driver was nervous). *See also United States v. Pulido Vasquez*, 311 Fed. App'x 140, 145 (10th Cir. 2009) (upholding reasonable suspicion despite language barrier). *But see United States v. Guerrero*, 374 F.3d 584, 590 (8th Cir. 2004) (rejecting reasonable suspicion where inconsistencies were attributable to language barrier). Here, Defendant and Dembele gave inconsistent statements not only about their travel plans—they stated opposite directions of travel and different destinations—but also about their relationship. Officer Nussle testified that both Defendant and his passenger communicated in English throughout the stop, and he had no reason to suspect that a language barrier was causing communication issues. Moreover, Officer Nussle testified that, in his experience and training, inconsistent statements about one's travel plans and relationship to other occupants of the vehicle suggest criminal activity. Officer Nussle thus reasonably attributed these inconsistent statements to the presence of criminal activity.

Similarly, an out-of-state license plate and presence in a high crime area may create reasonable suspicion, and the Fourth Circuit has taken judicial notice that I-95 is a known drug corridor. *See United States v. Watkins*, 816 Fed. App'x 821, 826-27 (4th Cir. 2020); *Newland*, 246 Fed. App'x at 188 (noting presence in I-95 corridor added to reasonable suspicion). Here, the expired Texas license plate did not correlate with Defendant's Ohio driver's license, and both were unrelated to the cities Defendant and his passenger named in their travel plans. Officer Nussle testified that the fact that the license plate was out of state also contributed to his suspicion of drug trafficking. Taken together with Defendant's presence in an area that the

Fourth Circuit has repeatedly recognized as a drug corridor, these facts contributed significantly to the creation of reasonable suspicion.

Finally, the multiple cardboard boxes in the rear of Defendant's vehicle furthered Officer Nussle's reasonable suspicion. Though not significant in the reasonable suspicion analysis, the presence of sealed cardboard boxes in a vehicle may contribute to an officer's reasonable suspicion of criminal activity. *See United States v. White*, 42 F.3d 457, 460 (8th Cir. 1994) (noting boxes in vehicle contributed to reasonable suspicion). Officer Nussle testified that his experiences in law enforcement led him to associate sealed cardboard boxes in the back of a vehicle with the trafficking of marijuana.

In light of the facts known to Officer Nussle at the time, he had reasonable suspicion that Defendant was engaged in criminal activity. Accordingly, the canine scan of Defendant's vehicle was constitutional.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress Evidence Obtained in Violation of the Fourth Amendment (ECF No. 50) is DENIED.

Dated: October 9th, 2024

/s/
_____
Richard D. Bennett
United States Senior District Judge