IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA         *

v.                               *     Criminal No. RDB-23-0265

IDRISSA BAGAYOKO,                *

*Defendant.*

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Defendant Idrissa Bagayoko ("Bagayoko" or "Defendant") is charged in a two-count Indictment with knowingly distributing and selling an unregistered pesticide in violation of the Federal Insecticide, Rodenticide and Fungicide Act, 7 U.S.C. § 136j(a)(1)(A) and § 136*l*(b)(1)(B) (Count I), and reckless violation of transportation safety regulations promulgated pursuant to the Federal Hazardous Materials Transportation Act, 49 U.S.C. § 5110 and § 5124(a) (Count II). (ECF No. 1.) On October 7, 2024, this Court held an initial Motions Hearing in which it addressed Defendant's Motion to Suppress Evidence Obtained in Violation of the Fourth Amendment, (ECF No. 50). That Motion (ECF No. 50) was denied on the record at the hearing and in a subsequent Memorandum Opinion and Order.[1] (ECF No. 66; ECF No. 67.) Among the motions that remain pending before this Court is

---

[1] At the conclusion of the hearing on October 7, 2024, and by subsequent letter order, the Court set a continuation of the hearing for October 24, 2024, to address remaining pending motions and any forthcoming motions *in limine*. (ECF No. 63.)

1

Defendant's Motion to Suppress Statements ("Defendant's Motion") (ECF No. 51), in which he argues that he did not knowingly and intelligently waive his *Miranda*[2] rights.[3]

The parties' submissions have been reviewed and, on October 24, 2024, the Court heard arguments regarding Defendant's Motion. For the reasons set forth on the record at the hearing and explained below, Defendant's Motion (ECF No. 51) is DENIED.

## BACKGROUND

Bagayoko, who is a native French-speaker from the Republic of Mali, has lived in the United States since 2004 and has been a United States citizen since 2022. (ECF No. 51 at 1; ECF No. 55 at 1-2.) His charges stem from a traffic stop on September 29, 2021, during which eighteen boxes each containing ninety-six bottles of the pesticide Sniper DDVP were seized from his minivan.[4] (ECF No. 51 at 2.) Throughout the approximately ninety-minute traffic stop, Bagayoko communicated clearly in English with Elkton Police Sergeant Matthew Nussle ("Sergeant Nussle") and Elkton Police Officer Ulysses Demond ("Officer Demond"). Over the sound of nearby traffic, Bagayoko conversed with Officer Demond about driving long distances, using a navigation system to drive a large truck in New York City, the skill of drivers from different states, and his enjoyment of driving and his job.

---

[2] Under *Miranda v. Arizona*, law enforcement must provide specific warnings to suspects interrogated while in custody. 384 U.S. 436 (1966).

[3] The October 24, 2024, Motions Hearing also addressed four other motions by Defendant: (1) Defendant's Opposition to the Government's Notice of Intent to Present Opinion Testimony by Lay Witnesses (ECF No. 56); (2) Defendant's Motion in Limine to Exclude Evidence or Argument About the Potential Harms or Effects of Dichlorvos or Any Other Pesticide (ECF No. 68); (3) Defendant's Motion in Limine to Exclude Testimony About the Importance of Any Law or Regulation (ECF No. 69); and (4) Defendant's Motion in Limine to Preclude Portions of Law Enforcement Body-Worn Camera Video (ECF No. 70). Those Motions were addressed on the record and by separate Order dated October 28, 2024.

[4] The facts surrounding the traffic stop are summarized in a prior Memorandum Opinion (ECF No. 66) and need not be repeated here. At both the October 7, 2024, hearing and the October 24, 2024, hearing, this Court heard testimony of the officers involved in the traffic stop and watched body-worn camera video footage of the stop.

After the officers discovered the Sniper DDVP in his vehicle, Bagayoko was arrested and taken to the Elkton Police Station for a thirty-eight-minute custodial interview with Sergeant Nussle, Special Agent Christopher Michael ("SA Michael"), and Resident Agent in Charge Dan Salak ("RAC Salak") of the Environmental Protection Agency Criminal Investigation Division ("EPA-CID").  (ECF No. 51 at 2.)  The agents began the interview by asking Bagayoko to spell his name aloud.  (ECF No. 51 Ex. 1 at 0:20-30.)  Bagayoko mispronounced some of the letters and skipped the second "I" in his name before writing it out for the agents.  (*Id.* at 0:20-0:55).  SA Michael then read Bagayoko his *Miranda* rights and asked if he understood them.  (*Id.* at 1:25-1:38.)  Bagayoko replied, "… I speak English … I go to school … I'm more comfortable in French."  (*Id.* at 1:38-1:55.)  SA Michael repeated his question, and Bagayoko responded, "It is no problem for that … any problem here … maybe, tell me something, you gonna go slowly, we are gonna go slowly so tell me what you say."  (*Id.* at 1:58-2:10; 2:11-2:21.)  SA Michael said he would speak slowly and again asked if Bagayoko understood his rights.  (*Id.* at 2:21-2:25.)  Bagayoko answered, "okay," and SA Michael asked, "Yes or no?"  (*Id.*)  Bagayoko then stated, "yes."  (*Id.* at 2:25-2:34.)  SA Michael asked if Bagayoko waived his rights, and he responded, "it is no problem to talk to me …." (*Id.* at 2:44-2:47.)  The agents did not provide a French translation of the rights, and Bagayoko did not request any translation or interpretation.  (*Id.*)

During the interview, SA Michael spoke slowly and deliberately repeated Bagayoko's answers to ensure that he properly understood him.  Bagayoko's relevant responses throughout the thirty-eight-minute interview revealed his clear understanding and proficiency in the English language.  He discussed his personal history—including his country of origin,

3

address, and family history—and his business, Maliba Trading, which sells products from various African countries. (*Id.* at 7:25-55; 12:00-13:00.) Bagayoko differentiated his business, which largely sells products from Mali, from similar businesses that sell more products from Ghana, Nigeria, and Tulu. (*Id.*) In response to questions about the boxes in his van, Bagayoko discussed his customer in Maryland, his warehouse, a business associate for whom he was transporting the Sniper DDVP, and transport of items from Mali. (*Id.* at 12:00-16:00.) Bagayoko told the agents that he would explain to his business associate that he had been arrested by police. Bagayoko also told the agents that his father had been a police officer in the Republic of Mali. At the conclusion of the interview, Bagayoko provided the agents with the passcode to his phone and consented to a review of his text messages. He never stated that he did not understand a question or wished to conclude the interview.

Following the interview, SA Michael reviewed Bagayoko's text messages and immigration records. As SA Michael testified at the October 24, 2024, hearing, approximately eighty percent of Bagayoko's text messages, including his business communications, were in English. Bagayoko's immigration file also revealed that he had completed forms in English in which he declared, under penalty of perjury, that he (1) understood the questions and the answers on the forms, and (2) waived his right to an attorney during his naturalization. SA Michael also learned that Bagayoko petitioned for a Department of Transportation license in 2018. In October 2021, SA Michael met Bagayoko at his store in New York to return his phone. During that meeting, SA Michael and Bagayoko against had a conversation in English without the assistance of an interpreter or translator.

**STANDARD OF REVIEW**

In a motion to suppress statements based on improper waiver of *Miranda* rights, the government bears the burden to "prove waiver only by a preponderance of the evidence." *Colorado v. Connelly*, 479 U.S. 157, 168 (1986). *See also United States v. Matlock*, 415 U.S. 164, 177 78 n. 14 (1974) ("[T]he controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence.").

The Fifth Amendment states that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. CONST. AMEND. V. The privilege against self-incrimination applies to the states through the Fourteenth Amendment. *See Malloy v. Hogan*, 378 U.S. 1, 8 (1964). To protect these rights, a suspect must be provided specific warnings concerning his rights when the suspect is interrogated while in custody. *Miranda v. Arizona*, 384 U.S. 436 (1966). A defendant may, however, waive the protections afforded by *Miranda*. To prove that a defendant validly waived his rights, the Government must show that, in the totality of the circumstances, the defendant voluntarily relinquished the rights and was fully aware of not only the waiver but the consequences of that waiver. *Moran v. Burbine*, 475 U.S. 412, 421 (1986); *see also Miranda*, 384 U.S. at 44 (holding waiver must be made "voluntarily, knowingly, and intelligently"). The "background, experience, and conduct" of the defendant are particularly relevant in this inquiry. *U.S. v. Young*, 529 F.2d 193, 195 (4th Cir. 1975) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

**ANALYSIS**

In his Motion, Bagayoko argues for the suppression of his statements and any physical or testimonial evidence derived therefrom because, due to his limited English proficiency, his

*Miranda* waiver was not knowing and intelligent.[5]  (ECF No. 51 at 5, 6, 7.)  Defendant explains that he grew up speaking French in the Republic of Mali and has never previously encountered the criminal justice system.  (*Id.*)  He contends that four months after the stop occurred, he failed an English and civics test required for his naturalization.  (ECF No. 60 at 4.)  Similarly, he asserts that his wife signed and completed business forms regarding the United States Motor Carrier Regulations.  (*Id.*)  He argues that his unfamiliarity with the legal system and limited English ability prevented him from comprehending his *Miranda* rights in English.  (ECF No. 51 at 5-6.)  Defendant argues that his lack of understanding was clear because he asked the agents to speak slowly and responded "ok" to each right.  (*Id.* at 6.)  Defendant notes that the agents did not explain the rights individually, assess Defendant's understanding, or try to find an interpreter.  (*Id.* at 7.)

In opposition, the Government argues that Defendant had sufficient familiarity with the United States and the English language to make his waiver valid.  (ECF No. 55 at 1.)  First, the Government recites Defendant's decades-long residency in the United States and his familiarity with American regulatory systems, including: (1) Defendant attested to and signed an affidavit waiving his right to be represented by counsel during an immigration interview in 2014; (2) Defendant became a naturalized citizen in 2022; and (3) Defendant applied for a

---

[5] Defendant does not challenge the voluntariness of his waiver, and the Government concedes that the waiver occurred during a custodial interview.  Therefore, the only issue is whether Defendant's waiver was knowing and intelligent.  Under the fruit of the poisonous tree doctrine, evidence derived from evidence that is illegally obtained must be suppressed.  *See Wong Sun v. United States,* 371 U.S. 471, 487-88 (1963) (discussing exclusion of evidence that is "fruit of the poisonous tree).  Accordingly, were the Court to suppress Defendant's statements, any evidence derived therefrom—including evidence from Defendant's cell phone and subsequent conversation with SA Michael—would have to be suppressed.

Department of Transportation license and in 2022 certified that he was familiar with Federal Motor Carrier Safety Regulations to permit his business to engage in commerce. (*Id.* at 1-2.)

Next, the Government argues that Defendant's behavior proved his understanding of English. (*Id.* at 3.) The Government contends that Defendant spoke in English with Officer Demond during the traffic stop and never stated that he could not understand their conversation, which covered driving distances, traffic, and the content of the boxes in Defendant's van. (*Id.* at 3-4.) Similarly, the Government asserts that during the interview, Defendant acknowledged each *Miranda* warning with "ok" or "mm-hmm." (*Id.* at 5.) He then told officers that it was "no problem" and he could "speak English" but asked that SA Michael speak slowly. (*Id.*) The Government notes that Defendant never said he did not understand a question, needed an interpreter, or wanted to end the interview. (*Id.* at 6.)

A language barrier does not automatically invalidate a *Miranda* waiver. *See United States v. Guay*, 108 F.3d 545, 549 (4th Cir. 1997). Rather, courts evaluate the validity of a non-native English speaker's *Miranda* waiver under the totality of the circumstances by weighing their background and experience, including: (1) whether the defendant indicated he understood English; (2) whether the defendant affirmatively indicated he understood the rights; (3) the length of the defendant's residency in the United States; and (4) the defendant's previous encounters with the criminal justice system. *United States v. Santos*, RDB-13-321, 2013 WL 5604434, at *3 (D. Md. Oct. 11, 2013) *aff'd United States v. Santos*, 767 F. App'x 426 (4th Cir. 2019) (citing *United States v. Moreno*, 122 F. Supp. 2d 679, 681 (E.D. Va. 2000); *see also U.S. v. Young*, 529 F.2d 193, 195 (4th Cir. 1975) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). Under this test, the Fourth Circuit has repeatedly upheld waivers by non-native English

7

speakers.  *See, e.g., Guay*, 108 F.3d at 549-50 (upholding waiver where defendant could read and write English, asked detectives to speak slowly, and responded affirmatively to each *Miranda* right); *United States v. Hoang*, 153 F. App'x 164, 165-66 (4th Cir. 2005) (upholding waiver where defendant communicated easily with officers in English and acknowledged each *Miranda* right); *United States v. Querubin*, 150 F. App'x 233, 234-35 (4th Cir. 2005) (upholding waiver where defendant confirmed in English that he understood his rights and answered officers' questions in detail).

Defendant here clearly understood the nature of the *Miranda* warnings that SA Michael carefully read him.  Throughout both the traffic stop and the custodial interview on September 29, 2021, Defendant conversed in English with officers.  As Officer Demond's body-worn camera footage shows, even on the side of a busy road with traffic driving by at speed, Defendant was able to answer numerous questions about his travels, traffic, the skill of drivers in different states, jobs that require significant driving, and his experiences using a navigation system to drive a large truck through New York City.  At one point, Defendant even offered a version of the adage that one who likes their job does not work a day in their life.  At no point did Defendant appear to misunderstand or require clarification of Officer Demond's questions.

During the custodial interview, Defendant told the officers that he was "more comfortable in French" but repeatedly made clear that it was no problem for him to speak with them.  As SA Michael read Defendant's *Miranda* rights, he responded to each right with an affirmative "ok" or "mm-hmm."  He then spent thirty-eight minutes providing relevant and responsive answers to questions about how he acquired the eighteen boxes in his vehicle;

8

his business dealings associated with those boxes; his transport of items across the Atlantic; his business finances; and his store and warehouse. Defendant also acknowledged that he planned to tell a business associate that he had been arrested in connection with the boxes and that he knew Sniper DDVP is dangerous. Defendant's ability to understand the agents' questions and respond in English—including explaining various shipping and transportation practices related to his business—demonstrates that he understood and appreciated his *Miranda* rights when he waived them.

Defendant's immigration records and business dealings with the United States Department of Transportation ("US DOT") Federal Motor Carrier Administration reveal his familiarity with American legal systems. In 2014, after he had been in the United States for a decade, Defendant signed an affidavit waiving his right to an attorney. (GX 7.) In that waiver, Defendant checked a box affirming, under penalty of perjury, that he had not used the assistance of an interpreter to complete the form. Defendant thus had some familiarity with the concept of legal representation even though he has had no previous encounters with the criminal justice system. In 2021, Defendant received a letter from US DOT Federal Motor Carrier Administration rejecting his application for a DOT license to transport dry goods in interstate commerce. Defendant had initially submitted his application in 2018, suggesting that since at least 2018 he has had some interaction in English with regulatory agencies in the United States.

Finally, Defendant's seventeen-year residency in the United States heavily favors a finding that he knowingly waived his *Miranda* rights.[6] *See Santos*, 2013 WL 5604434, at *3 (noting defendant's 20-year residency in the United States and status as a naturalized citizen favored a knowing and intelligent *Miranda* waiver); *Guay*, 108 F.3d at 550 (noting defendant's travel to various states demonstrated his ability to understand English). During his seventeen years in the United States, Defendant married twice, had at least three children, obtained status as a legal permanent resident, ran a trading business; applied for a federal license to transport dry goods in interstate commerce; and traveled extensively throughout the United States. As SA Michael testified at the Motions Hearing, approximately 80 percent of Defendant's phone messages, including business communications, were in English.[7] Defendant's various experiences during his decades in the United States show that he had sufficient proficiency in English to understand the *Miranda* rights that SA Michael carefully reviewed with him.

Under the totality of the circumstances, including Defendant's traffic stop, custodial interview, and seventeen-year residency in the United States, Defendant knowingly and intelligently waived his *Miranda* rights. Accordingly, Defendant's Motion is DENIED.

---

[6] At the time of the writing of this Memorandum Opinion, Defendant has lived in the United States for twenty years and has been a United States citizen for approximately two years. Because the traffic stop and arrest occurred in 2021, however, Defendant had lived in the United States for seventeen years and was a legal permanent resident at the time of the custodial interview.

[7] It is somewhat curious that, in 2022, Defendant failed an English and civics exam required for naturalization. (DX01.) The standard to waive one's *Miranda* rights, however, is entirely distinct from the standard to pass a test demonstrating one's ability to speak, read, and write English for the purposes of naturalization. Moreover, the Court notes that Defendant passed the same exam just two months later, in March of 2022. (GX12.)

## CONCLUSION

For the reasons explained above and on the record at the October 24, 2024, Motions Hearing, Defendant's Motion to Suppress Statements (ECF No. 51) is DENIED.

Dated: October 28th, 2024

/s/
_____
Richard D. Bennett
United States Senior District Judge