IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Criminal No. RDB-23-0265 |
| IDRISSA BAGAYOKO, | * | |
| *Defendant.* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>MEMORANDUM ORDER</u>

Defendant Idrissa Bagayoko ("Defendant" or "Mr. Bagayoko") was charged in a two-Count Indictment with illegal distribution and sale of an unregistered pesticide in violation of the Federal Insecticide, Fungicide, Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 *et seq.*, (Count I), and reckless violation of transportation safety regulations promulgated pursuant to the Hazardous Materials Transportation Act, 49 U.S.C. §§ 5104, 5124, (Count II). *See* (ECF Nos. 1, 99, 108.)  On November 22, 2024, after two days of trial testimony, a federal jury convicted Mr. Bagayoko of both Counts. (ECF No. 108.) Presently pending before this Court is Mr. Bagayoko's post-verdict Motion for Judgment of Acquittal and, in the Alternative, to Dismiss Count Two on As-Applied Void for Vagueness Grounds (ECF Nos. 111, 118) ("Defendant's Motion"). On April 3, 2025, the Court heard the parties' arguments on this Motion and denied the Motion on the record. For the reasons stated on the record and explained further below, Mr. Bagayoko's Motion for Judgment of Acquittal and, in the Alternative, to Dismiss Count Two on As-Applied Void for Vagueness Grounds (ECF No. 111) is DENIED.

1

## BACKGROUND

Evidence presented at trial revealed that, on September 29, 2021, Elkton Police Department officers conducted a traffic stop of Mr. Bagayoko's minivan and seized 18 cardboard boxes each containing 96 bottles of Sniper DDVP from his vehicle. Sniper DDVP is an insecticide containing dichlorvos, a chemical that may be harmful to humans or animals if ingested. Mr. Bagayoko was traveling without shipping papers, which are required to transport hazardous substances, including substances containing a reportable quantity of dichlorvos of ten or more pounds in one package.[1] In relation to his business, Maliba Trading, Mr. Bagayoko had previously applied for a DOT transportation license to transport dry goods. Sniper DDVP is an unregistered pesticide—that is, it is not registered with the Environmental Protection Agency ("EPA")—meaning that it is not legal to sell or distribute in the United States. A few days before the traffic stop, Mr. Bagayoko sent or received messages on his phone via WhatsApp that showed an up-close image of Sniper DDVP, including a picture of the toxic warning label containing a skull and crossbones.

At the time of the traffic stop, Mr. Bagayoko and his nephew,[2] Seydou Dembele ("Dembele"), who was a passenger in the vehicle, were transporting items for Maliba Trading. Mr. Bagayoko and Dembele had traveled from New York, where Mr. Bagayoko lives, to Maryland with the boxes and were on their way from Maryland to Philadelphia. When officers asked what was inside of the eighteen professionally taped cardboard boxes in Mr. Bagayoko's

---

[1] As discussed in detail below, Department of Transportation ("DOT") regulations specify that a hazardous material becomes a hazardous substance if, among other requirements, it contains more than 10 pounds of a reportable quantity of dichlorvos in one "package." *See* 49 C.F.R. § 171.8.
[2] Although Dembele is not Mr. Bagayoko's nephew by blood relation, Mr. Bagayoko described him as such based on their relationship and his relationship with Dembele's mother. Dembele was not charged in this case.

vehicle, Mr. Bagayoko stated that it was lemon-flavored tea. Officers opened and searched the boxes, ultimately discovering that each box contained white boxes wrapped in black paper and stamped with the hazardous Class 6 label with a skull and crossbones and a UN3018 number label. Inside each white box were 96 bottles of Sniper DDVP. When officers opened the boxes during the search, they smelled a chemical-like odor and at least one officer got a headache and required medical treatment.

After concluding that Sniper DDVP is not legal to distribute or sell in the United States, the officers arrested Mr. Bagayoko and transported him to the Elkton Police Department for a taped custodial interview with law enforcement officials, including agents of the Environmental Protection Agency ("EPA"). During the interview, Mr. Bagayoko stated that he knew it is not legal to bring Sniper DDVP to the United States and people do not officially declare it. When the interviewing officers stated that Mr. Bagayoko was "the one with the van with the illegal chemicals in the van," Mr. Bagayoko responded "that's true . . . ." Law enforcement subsequently sent the Sniper DDVP for further chemical testing, and Physical Scientist Michael Eller of the EPA' National Enforcement Investigation Center ("Physical Scientist Eller"), who was involved in the transportation of the bottles for testing, noted that he could smell a chemical odor near the boxes. The chemical testing revealed that the bottles of Sniper DDVP contained dichlorvos in a concentration of 1,000 grams/liter (g/L), consistent with their label. A subsequent statistical analysis based on the chemical testing concluded that Mr. Bagayoko had transported a total of 335 pounds of dichlorvos.

At trial, to provide the jury a background understanding of Department of Transportation ("DOT") regulations related to dichlorvos, the Government presented the lay

3

testimony pursuant to Federal Rule of Evidence 701 of DOT Branch Chief Adam Lucas ("Mr. Lucas"), who explained the definition of "package" and "packaging" under the regulations. Using an example of glass wine bottles transported in a fiberboard box, Mr. Lucas explained combination packaging, which is required for certain materials. Jurors were later instructed, "[f]or you to find the defendant guilty on Count Two of recklessly violating transportation safety regulations, the government must prove beyond a reasonable doubt that: 1. The defendant transported in commerce; 2. A hazardous substance; 3. Without shipping papers; and 4. The defendant acted recklessly." As to the "hazardous substance" element, the Court instructed the jury that:

> The second element on Count Two that the government is required to prove beyond a reasonable doubt is that the defendant was transporting a "hazardous substance."
>
> The term "hazardous substance" means a material, including its mixtures and solutions that is: (1) listed in "Table 1 to Appendix A—Hazardous Substances Other Than Radionuclides;" (2) is in a quantity, in one package, which equals or exceeds 10 pounds; and (3) when in a mixture or solution is in a concentration by weight of at least .02% or 200 parts per million (PPM), or stated another way, 0.2 grams per liter (g/L).
>
> The term "package" means a packaging plus its contents.
>
> The term "packaging" means a receptacle and any other components or materials necessary for the receptacle to perform its containment function in conformance with the minimum packing requirements of the Hazardous Materials Regulations.
>
> Therefore, the government must prove beyond a reasonable doubt that the defendant was transporting 10 pounds or more of dichlorvos in a single package.
>
> The government does not need to show that all packages contained 10 pounds or more of dichlorvos, but the government must show that at least one package contained at least 10 pounds of dichlorvos.

On November 22, 2024, the jury returned a verdict convicting Mr. Bagayoko on both Counts. On December 5, 2024, Mr. Bagayoko timely filed his Motion for Judgment of Acquittal and, In the Alternative, to Dismiss Count Two on As-Applied Void for Vagueness Grounds (ECF No. 111). The Government responded in Opposition (ECF No. 120), and Mr. Bagayoko replied (ECF No. 121). On April 3, 2025, the Court heard the parties' arguments on this Motion and DENIED the Motion on the record. This Memorandum Order further explains the reasons for that denial.

## STANDARDS OF REVIEW

### I.  Motion for Judgment of Acquittal

Pursuant to Rule 29 of the Federal Rules of Criminal Procedure, a court must enter a judgment of acquittal of any offense "for which the evidence is insufficient to sustain a conviction." FED. R. CRIM. P. 29(a). A jury verdict must be sustained, however, if when viewing the facts in the light most favorable to the Government, there is substantial evidence to support it. *Evans v. United States*, 504 U.S. 255, 257 (1992) (citing *Glasser v. United States*, 315 U.S. 60, 80 (1942)). The United States Court of Appeals for the Fourth Circuit has "defined 'substantial evidence' as 'evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt.'" *United States v. Smith*, 451 F.3d 209, 216 (4th Cir. 2006), *cert. denied*, 549 U.S. 892 (2006) (citation omitted). In determining whether there is substantial evidence, this Court "must consider circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established." *United States v.. Tresvant*, 677 F.2d 1018, 1021 (4th Cir.1982).

A new trial is a drastic remedy, intended for a rare case. The Fourth Circuit has cautioned that a district court should exercise its discretion in this area "sparingly" and that it should grant a new trial "only when the evidence weighs heavily against the verdict." *United States v. Perry*, 335 F.3d 316, 320 (4th Cir. 2003) (quoting *United States v. Wilson*, 118 F.3d 228, 237 (4th Cir. 1997)). A new trial should be granted only if "it would be a miscarriage of justice to let the verdict stand." *United States v. Robertson*, 110 F.3d 1113, 1118 (5th Cir. 1997); *see also United States v. Arrington*, 757 F .2d 1484, 1485 (4th Cir. 1985).

## II.   Motion to Dismiss Indictment

All federal felonies must be prosecuted by an indictment that contains a "plain, concise, and definite written statement of the essential facts constituting the offense charged." FED. R. CRIM. P. 7(a) and (c)(1). The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, ... nor be deprived of life, liberty, or property without due process of law." Under the Sixth Amendment, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation." In conjunction with the notice requirement of the Sixth Amendment, the Indictment Clause provides two additional protections: the right of a defendant to be notified of the charges against him through a recitation of the elements, and the right to a description of the charges that is sufficiently detailed to allow the defendant to argue that future proceedings are precluded by a previous acquittal or conviction. *See Russell v. United States*, 369 U.S. 749, 763–64 (1962); *see also Hamling v. United States*, 418 U.S. 87, 117 (1974) ("An indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he

6

must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."); *United States v. Carrington*, 301 F.3d 204, 209–10 (4th Cir. 2002) (same).

As Judge Hollander of this Court has explained, "the Court should dismiss criminal charges in an indictment 'where there is an infirmity of law in the prosecution,' such as an unconstitutional statute." *United States v. Jackson*, 661 F. Supp. 3d 392, 397 (D. Md. 2023) (quoting *United States v. Engle*, 676 F.3d 405, 415 (4th Cir. 2012)). Where a defendant challenges the constitutionality of a statute underlying the charges in an indictment, he may raise a facial or as-applied challenge. *Id.* In a facial challenge, a defendant raises a "claim that the statute is unconstitutional *not* as it applies to [the defendant's] own conduct, but rather 'on its face' as it applies to the population generally." *Id.* (alteration in original) (quoting *United States v. Miselis*, 972 F.3d 518, 530 (4th Cir. 2020) *cert. denied* 141 S. Ct. 2756 (2021)). In an as-applied challenge, however, a defendant raises a claim "based on a developed factual record and the application of a statute to [the defendant.]" *Richmond Med. Ctr. for Women v. Herring*, 570 F.3d 165, 172 (4th Cir. 2009) (en banc). A statute is unconstitutionally vague as applied and violates the Due Process Clause of the Fifth Amendment when it does not provide adequate notice to a person of ordinary intelligence that his contemplated conduct is illegal, or is so vague as to encourage arbitrary and discriminatory enforcement. *United States v. Sun*, 378 F.3d 302, 309 (4th Cir. 2002) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)). "[V]agueness challenges to statutes that do not involve First Amendment freedoms must be examined in light of the facts of the case at hand." *United States v. Mazurie*, 419 U.S. 544, 550 (1975).

## ANALYSIS

### I. Motion for Judgment of Acquittal

In his Motion (ECF No. 118), Mr. Bagayoko argues for judgment of acquittal as to both Counts. As to Count I, he argues that the Government failed to prove beyond a reasonable doubt the knowledge element of that Count by failing to show that he sold a pesticide that he *knew was illegal to sell* in the United States. (ECF No. 118 at 2.) As to Count II, he asserts that the Government failed to prove beyond a reasonable doubt the "hazardous material" and mental state elements of the crime. Specifically, he asserts that the Government failed to prove that (1) the cardboard boxes in his vehicle were the "packages" for the purposes of the 10-pound RQ threshold, (*id.* at 6–20); and (2) he acted with deliberate indifference or conscious disregard to the consequences of his conduct, (*id.* at 20–21). In opposition, the Government argues substantial evidence supports conviction. (ECF No. 120.) The Court addresses each contention in turn.

#### A. Count I: Knowledge Requirement

Mr. Bagayoko contends that a judgment of acquittal is required as to Count I because the Government did not prevent sufficient evidence of his knowledge. Specifically, Mr. Bagayoko asserts that the only evidence from which a jury could have inferred his knowledge was his statement during his custodial interview that he knew it was not legal to bring Sniper DDVP into the United States.

To prove Count I, the Government had to establish that Mr. Bagayoko (1) sold or distributed; (2) an unregistered pesticide; and (3) acted knowingly. *See* 7 U.S.C. § 136j(a)(1)(A); 7 U.S.C. § 136*l*(b)(1)(B). This Court "can reverse a conviction on insufficiency grounds only

when the 'prosecution's failure is clear.'" *United States v. Moye*, 454 F.3d 390, 394 (4th Cir. 2006), *cert. denied*, 549 U.S. 983 (2006) (citation omitted). Indeed, if "any rational trier of fact could have found the elements of the crime beyond a reasonable doubt," the conviction must be sustained. *United States v. Murphy*, 35 F.3d 143, 148 (4th Cir.1994) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). A court deciding a Rule 29 motion "must consider circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established." *United States v.. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982).

During trial, the Government presented substantial evidence from which a rational jury could conclude that Mr. Bagayoko acted knowingly. First, his recorded statement established that he knew Sniper DDVP was illegal to import and that he recognized that he was "the one with the van with the illegal chemicals in the van." Second, EPA employee Tamica Cain testified that Sniper is an unregistered pesticide, and Mr. Bagayoko stipulated to this point at trial. Third, testimony and body-worn camera footage played at trial revealed that Mr. Bagayoko lied to law enforcement by telling them the boxes contained lemon flavored tea, rather than admitting that they contained Sniper. Finally, the bottles of Sniper DDVP were inside white boxes obscured by black paper, and the white boxes themselves were inside professionally taped cardboard boxes.[3] All of these facts—and particularly Mr. Bagayoko's own statements to police in which he admitted that he knew Sniper DDVP was illegal to import *and* lied to officers about the contents of the boxes—would enable a rational trier of

---

[3] There was no evidence presented at trial that Mr. Bagayoko participated in the taping or packaging of the boxes. Even so, the fact that Mr. Bagayoko transported the Sniper DDVP inside professionally taped boxes and obscured by black paper may have led a rational trier of fact to infer that he acted knowingly to distribute an unregistered pesticide.

9

fact to determine beyond a reasonable doubt that he acted knowingly. *See Murphy*, 35 F.3d at 148. For this reason, Mr. Bagayoko's Motion (ECF No. 111) is DENIED as to Count I.

### B. Count II

To prove reckless violation of transportation safety regulations under Count II, the Government had to establish that Mr. Bagayoko (1) transported in commerce; (2) a hazardous substance; (3) without shipping papers, and (4) acted recklessly. *See* 49 U.S.C. §§ 5110, 5124; 49 C.F.R. § 177.817. Mr. Bagayoko contends that there was insufficient evidence to prove the hazardous substance and recklessness elements of reckless violation of transportation safety violations. The Court addresses each argument separately.

#### i. Hazardous Substance Element

Under the second or hazardous substance element of Count II, the Government had to show that Mr. Bagayoko was transporting "[a] material, including its mixtures and solutions that is: (1) listed in Table 1 to Appendix A—Hazardous Substances Other than Radionuclides; (2) is in a quantity in one package, which equals or exceeds 10 pounds; and (3) when in a mixture or solution is in a concentration by weight" of at least .02 percent or 200 parts per million. *See* 49 C.F.R. § 178.1 (Table 1 to Appendix A—Hazardous Substances Other than Radionuclides). For the purposes of this element, the Government had to prove that at least one cardboard box in Mr. Bagayoko's minivan was a "package," defined as "a packaging plus its contents." 49 C.F.R. § 171.8. A "packaging" means "[a] receptacle and any other components or materials necessary for the receptacle to perform its containment function in conformance with the minimum packing requirements of the Hazardous Materials

Regulation." *Id.* The Court instructed the jury as to all of these definitions when it provided instructions on the hazardous substance element of Count II.[4]

Mr. Bagayoko argues that the Government did not prevent sufficient evidence to enable the jury to determine that a cardboard box, rather than each individual bottle of Sniper DDVP, was the relevant "package." Specifically, Mr. Bagayoko argues that pursuant to the DOT regulations, a plastic drum is a permissible "single packaging" for materials containing dichlorvos. For this reason, he contends that each individual bottle of Sniper DDVP was a plastic drum that met the definition of "package" because it performed the containment function—that is, it contained the liquid Sniper DDVP—in conformance with the minimum packing requirements of the Hazardous Materials regulation. *See* 49 C.F.R. § 171.8. He asserts that because each bottle performed the containment function alone, the cardboard box was not necessary to the containment function and could not have been the "package" at issue. Moreover, he contends that the Government never presented any evidence that would have allowed the jury to determine that each bottle was *not* the relevant package—that is, jurors did not have sufficient evidence from which to determine whether the bottle was actually the relevant package.

As an initial matter, the determination of the appropriate package in this case is a factual question strictly within the province of the jury. *See, e.g.*, *Burcham v. J.P. Stevens & Co.*, 209 F.2d 35, 39–40 (4th Cir. 1954) ("Questions of fact are questions for the jury; and they do not become questions for the court merely because their solution may require scientific knowledge

---

[4] As noted on the record at the Hearing regarding Defendant's Motion, the Court adopted Defendant's proposed jury instruction on hazardous substances in full and added a brief explanation in layman's terms at the conclusion of the instruction.

11

. . . ."); *United States v. Robinson*, 855 F.3d 265, 269 (4th Cir. 2017) ("Courts must resist invading the jury's province by transforming questions of fact into matters of law."). Mr. Bagayoko's Motion on this element of Count II thus hinges on whether there existed sufficient evidence to allow a rational trier of fact to determine that the cardboard box was the relevant package. The Government presented substantial evidence that could have allowed a rational trier of fact to determine that the cardboard box, rather than each bottle alone, was the package at issue.

First, the Government provided the testimony of Mr. Lucas, who provided background information about the meaning of the DOT regulations.[5] He explained the terms "containment function" and "minimum packing requirements of this subchapter:"

> When I refer to containment what I really mean is the packaging of your material. So, you know, what is the minimum packaging required under our regulations. So, you know, for every hazardous material you're going to look at it, what quantity am I looking to transport or ship. And then from there, you're going to look, using that hazardous materials table, and determine, you know, what's the appropriate packaging for this.
>
> And this is a really critical step, because depending on the material, you know, certain hazardous materials may react with other—certain packages. So, you know, for example, certain corrosives, if they're put into aluminum drums they can have—they can pressurize the drum and now create an explosion hazard from that. So, you know, we may require stainless steel in that case.
>
> So packaging is kind of—is really important because it's that main way that we're keeping this material from entering the environment or from harming people.

---

[5] To the extent that Mr. Bagayoko argues that the DOT regulations were so complicated that the jury could not use common sense to understand them and needed the assistance of expert testimony, the Court rejects this argument. Unlike in cases in which this Court has determined that expert testimony was required such that the jury lacked sufficient evidence to reach a verdict of conviction, *see, e.g.*, *United States v. Elfenbein*, 708 F. Supp. 3d 621 (D. Md. 2023), Mr. Lucas's testimony in this case enabled the jurors to understand the regulations governing packages and packaging.

(ECF No. 100 at 127–128.) He explained that a substance might involve "combination packaging" in which there are multiple receptacles or inner and outer packaging, giving an example of glass wine bottles inside a fiberboard box. (ECF No. 100 at 134.) Specifically, he explained that because the wine bottles might be subject to breakage, each bottle alone could not be the relevant package, which would be the fiberboard box.

Second, the Government provided fact testimony from various witnesses regarding the cardboard boxes and "package" at issue. Sergeant Nussle, who was present at the initial traffic stop, testified that he saw professionally taped cardboard boxes, opened them to find white bottles labeled Sniper, and got a headache from the smell. (ECF No. 100 at 29, 30.) Sergeant Nussle's body-worn camera footage captured white bottles labeled SNIPER DDVP inside cardboard boxes. (GX 1; ECF No. 100 at 38.) Officer Demond testified that he saw cardboard boxes in Mr. Bagayoko's vehicle. (ECF No. 100 at 78.) Special Agent Christopher Michael ("SA Michael") testified that each box contained 96 bottles labeled SNIPER DDVP, and each box was labeled with the hazardous Class 6 label with a skull and crossbones and a UN3018 number label. (ECF No. 116 at 22–23.)

Collectively, this evidence and testimony would have allowed a rational trier of fact to conclude that the cardboard boxes, rather than the bottles alone, were the relevant packages for the purpose of Count II. Mr. Lucas's robust explanation of "containment" and "minimum packaging requirements," including examples, provided the jurors guidance regarding the definition of package on which they were instructed at the conclusion of trial testimony. Taken together with the additional fact testimony of Sergeant Nussle, SA Michael, and Officer Demond, among others, such evidence would have enable a rational trier of fact to conclude

13

that the boxes—rather than the bottles—were the relevant package. The evidence presented in this case does not "weigh[] heavily against the verdict," *Perry*, 335 F.3d at 320 (quoting *Wilson*, 118 F.3d at 237, and judgment of acquittal is not appropriate on this basis.

Similarly, the Government presented evidence that would have allowed a rational jury to conclude that the bottles did not perform the containment function in the manner required to make them a "package" within the regulations. Specifically, the Government presented body-worn camera footage that captured Officer Bagonis, one of the officers who responded to the traffic stop, stating that the smell was giving him a headache. (GX 2; ECF No. 100 at 78.) Mr. Lucas testified that "materials poisonous by inhalation" are part of the reason the DOT requires shipping papers for certain hazardous materials. (ECF No. 100 at 129.) Physical Scientist Eller then testified that he could smell an odor near the boxes, and the "primary hazard" of Sniper DDVP "seemed to be the toxicity, either from inhaling the vapors or getting the material in contact without your skin." (*Id.* at 144–45, 151.) Such evidence and testimony would have allowed a rational trier of fact to conclude that the bottles alone did not perform the containment function because an odor still escaped the bottles.

Moreover, defense counsel presented the theory that the bottles—and not the cardboard boxes—were the relevant "packages" for the purpose of the hazardous material element of Count II during closing argument. As such, the jury was exposed to that theory of the case and evidently rejected it by returning a guilty verdict. Where the evidence presented at trial could support "different, reasonable interpretations, the jury decides which interpretation to believe." *Murphy*, 35 F.3d at 148 (quoting *United States v. Garcia*, 868 F.2d 114, 116 (4th Cir. 1989), *cert denied*, 490 U.S. 1094 (1989)). Based on the evidence that the

Government presented at trial, sufficient evidence exists to support the jury's conclusion that the cardboard boxes were the relevant "package" for the purpose of the hazardous material element of Count II. No judgment of acquittal is appropriate on this basis.

### ii.     Recklessness Element

Mr. Bagayoko also contends that insufficient evidence existed to allow the jury to conclude that he acted recklessly as required for conviction under Count II. *See* 49 U.S.C. § 5124. Specifically, Mr. Bagayoko argues that the evidence presented at trial at most showed only his knowledge that (1) he was transporting Sniper DDVP, and (2) Sniper DDVP is a pesticide. (ECF No. 118 at 20.) Mr. Bagayoko asserts that this is sufficient to show only lack of mistake and not "deliberate indifference or conscious disregard to the consequences of his conduct" in transporting Sniper DDVP without shipping papers. (*Id.* at 20–21; ECF No. 121 at 11.)

In this case, there was substantial evidence for the jury to conclude that Mr. Bagayoko acted recklessly. Specifically, the Government presented evidence that Mr. Bagayoko (1) lied to officers and told them the boxes contained tea; (2) admitted in his recorded interview at the police station that he told his wife not to use Sniper DDVP in his home and said "I know, I know" when informed Sniper DDVP "is a dangerous chemical"; (3) transported 335 pounds of dichlorvos, and the bottles of Sniper DDVP contained dichlorvos in a concentration of 1,000 grams/liter, which well in excess of the concentration required to trigger a shipping papers requirement; (4) admitted that he traveled from New York to Maryland, meaning he crossed state lines; (5) had previously received images showing the toxic warning and skull and crossbones label on Sniper DDVP; and (6) had previously applied for DOT shipping license

15

to transport dry goods supports. Collectively, such evidence would have allowed a rational factfinder to determine that Mr. Bagayoko acted with deliberate indifference or conscious disregard to the consequences of transporting Sniper DDVP without shipping papers.

Substantial evidence existed to enable a rational trier of fact to determine that Mr. Bagayoko acted with deliberate indifference or conscious disregard for the consequences of his action. It is without dispute that some "rational trier of fact could have found the elements of the [crime] beyond a reasonable doubt." *Murphy*, 35 F.3d at 148. For this reason, judgment of acquittal is not appropriate as to Count II, and Defendant's Motion for Judgment of Acquittal (ECF No. 111) is DENIED as to Count I and Count II.

## II. Motion to Vacate and Dismiss Count II on As-Applied Void for Vagueness Grounds

Although Mr. Bagayoko only brings one Motion (ECF No. 111), styled as a Motion for Judgment of Acquittal under Federal Rule of Criminal Procedure 29, he raises an alternative argument to dismiss Count II on constitutional grounds.[6] Specifically, he contends that Count II is void for vagueness as-applied to him in this case because the DOT regulations that define "package" and "packaging," are vague as applied to the facts of this case. *See* 49 C.F.R. § 171.8; (ECF No. 118 at 21–23.) As explained above, conviction under Count II required the Government to establish that Mr. Bagayoko (1) transported in commerce; (2) a hazardous substance; (3) without shipping papers, and (4) acted recklessly. *See* 49 U.S.C. §§ 5110, 5124. DOT regulations determine when a hazardous material that contains dichlorvos becomes a "hazardous substance." Specifically, under 49 C.F.R. § 171.8, a hazardous substance means

---

[6] Mr. Bagayoko's as-applied challenge "is more akin to a motion to dismiss under Rule 12 than a motion for judgment of acquittal under Rule 29." *United States v. Wagoner*, 2022 WL 17418000, at *3 (W.D. Va. Dec. 5, 2022).

16

"a material, including its mixtures and solutions that is: (1) listed in "Table 1 to Appendix A—Hazardous Substances Other Than Radionuclides; (2) is in a quantity, in one package, which equals or exceeds 10 pounds; and (3) when in a mixture or solution" . . . "is in a concentration by weight" of at least .02% or 200 parts per million (PPM), or stated another way, 0.2 grams per liter (g/L). As such, the application of the definition of "hazardous substance" requires a determination of the relevant "package." Under 49 C.F.R. § 171.8, a "[p]ackage means a packaging plus its contents," and "[p]ackaging means a receptacle and any other components or materials necessary for the receptacle to perform its containment function in conformance with the minimum packing requirements of [the Hazardous Materials Regulations]." Mr. Bagayoko argues that a person of ordinary intelligence would not be able to apply these definitions to determine that the cardboard boxes, rather than the individual bottles of Sniper DDVP, were the relevant "package" in this case. (ECF No. 118 at 23.) For this reason, he contends that Count II should be dismissed and his conviction vacated on as-applied void for vagueness grounds.[7]

---

[7] The Government argues that Mr. Bagayoko attempts to disguise a facial challenge to the DOT regulations as an as-applied challenge. As such, the Government contends that Mr. Bagayoko's constitutional challenge to Count II is untimely. Under Rule 12 of the Federal Rules of Criminal Procedure, a defendant seeking to raise a defect in the indictment—including a constitutional challenge—must raise that defense as a pretrial motion if "the basis for the motion is then reasonably available" and "the motion can be determined without a trial on the merits." FED. R. CRIM. P. 12(b)(3). The Fourth Circuit has held that as-applied challenges that necessarily "depend on a consideration of facts" that "may or may not be developed at trial" can only be addressed after trial. *United States v. Hill*, 700 F. App'x 235, 237 (4th Cir. 2017). To the extent Mr. Bagayoko sought to raise a facial challenge, such a challenge would be untimely. The Court reaches Mr. Bagayoko's Motion to Dismiss or Vacate Count II solely as an as-applied challenge. Because this as-applied challenge depends on how the Government sought to apply the definition of "package" as applied to the facts of this case, it is timely. That is, Mr. Bagayoko could not have known the Government's theory of the case before the Government presented its case at trial.

The DOT regulations at issue are not unconstitutionally vague as applied to Mr. Bagayoko. "[W]here, as here, a criminal statute regulates economic activity, it generally 'is subject to a less strict vagueness test, because its subject matter is more often narrow and because businesses can be expected to consult relevant legislation in advance of action.'" *United States v. Sun*, 278 F.3d 302, 309 (4th Cir. 2002) (quoting *United States v. Iverson*, 162 F.3d 1015, 1021 (9th Cir. 1998)). Where a vagueness challenge implicates federal regulation, the Fourth Circuit has recognized that "regulatory complexity does not render a statute (or set of statutes) unconstitutionally vague." *United States v. Saunders*, 828 F.3d 198, 206 (4th Cir. 2016). Thus, "a 'statute need not spell out every possible factual scenario with 'celestial precision' to avoid being struck down on vagueness grounds." *Id.* (quoting *United States v. Whorley*, 550 F.3d 326, 334 (4th Cir. 2008)). Moreover, as the Supreme Court has explained, "a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982).

Although there do not appear to be any cases in which federal courts have considered an as-applied challenge to the DOT regulations implicated in Count II of this case, the Fourth Circuit has upheld a statute prohibiting the attempted export without a license of items on the Munitions list. *Sun*, 278 F.3d at 309. The Fourth Circuit explicitly noted that law enforcement's power to arrest was restrained solely to cases in which individuals were exporting (1) without a license, and (2) with the requisite criminal intent. *Id.* Similarly, the related regulations were not vague as applied because "a person of ordinary intelligence would understand what conduct is necessary to fall within the regulation . . . ." *Id.* at 311.

18

Furthermore, the Fourth Circuit has recognized the "sound" "principal of law" that "a statute does not fail the vagueness test simply because it involves a complex regulatory scheme, or requires that several sources be read together . . . ." *Saunders*, 828 F.3d at 207 (quoting *United States v. Zhi Yong Guo*, 634 F.3d 1119, 1122 (9th Cir. 2011)).

Under the DOT regulations at issue in this case, a person of ordinary intelligence could understand that the boxes were the relevant "package" such that they contained over ten pounds of dichlorvos, and the shipping papers requirement attached. The DOT regulation by its plain language contemplates a package that includes multiple components, such as a box containing bottles and black plastic. In this case, Mr. Bagayoko has not done more than argue that the regulatory scheme under which he is convicted is complex. This is not enough to make the DOT regulatory scheme at issue here unconstitutionally vague as-applied to him. *See id.* Accordingly, Mr. Bagayoko's Motion to Dismiss Count II is DENIED.

## CONCLUSION

For the reasons explained above and on the record at the April 3, 2025, motions hearing, it is this 4th day of April 2025 hereby ORDERED that:

1. Defendant's Motion for Judgment of Acquittal and, in the Alternative, to Dismiss Count Two on As-Applied Void for Vagueness Grounds (ECF No. 111) is DENIED;

2. The Clerk of this Court shall transmit a copy of this Memorandum Order to counsel of record.

/s/
_____
Richard D. Bennett
United States Senior District Judge